**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Michael J. Graft, Jr. | ) | Case No. 22 B 02921 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Ilene Goldstein, Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 24 A 00069 |
| | ) | |
| v. | ) | |
| | ) | Hon. Michael B. Slade |
| Michael J. Graft, Jr., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION GRANTING MOTIONS TO DISMISS IN PART AND
DENYING THEM IN PART**

Five motions to dismiss this Adversary Complaint pursuant to Rule 12 of the Federal

Rules of Civil Procedure (applicable here via Federal Rule of Bankruptcy Procedure 7012) were

filed and fully briefed before my appointment to the bench effective November 25, 2024.[1]  Upon

reviewing the Adversary Complaint and the Motions, I invited argument, *see* Dkt. No. 98, and

heard from the parties on December 9, 2024.  This opinion and accompanying orders resolve

each of the five pending Rule 12 motions.  The remainder of the case will be resolved pursuant to

the Scheduling Orders that I will enter separately.

---

[1] Dkt. No. 18 (Michael J. Graft, Jr.'s Motion to Dismiss); Dkt. No. 19 (Motion to Dismiss filed on behalf of Michael Graft III, James J. Meyer as Trustee of Various Trusts, Anne Louise, Maria Graft individually and as Trustee of the MJG Jr. Family Trust, Christina Marie, the Anne Louise Gift Trust, the Christina Maria Gift Trust, the MJG Jr. Family Trust, and the MJG Jr. Family Trust); Dkt. No. 20 (Motion to Dismiss Counts IV-VIII filed by Barrington Office Building and certain other defendants); Dkt. No. 21 (Motion to Dismiss Counts IV-VIII and XI-XIII filed by Great Properties II, LLC, and certain other defendants); Dkt. No. 22 (Motion to Dismiss filed on behalf of Maria Graft, individually).

Through this Adversary Proceeding Ilene Goldstein, in her capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estate of Michael J. Graft, Jr. (the "Debtor"), seeks to bring the MJG Jr. Family Trust (the "Trust")[2], its related assets, and certain other assets, into the estate for distribution to the Debtor's creditors.

The Adversary Complaint (Dkt. No 1) does not describe in any detail the Trust's activities for approximately the first decade of its existence.  The gist of the Adversary Complaint is a series of allegations claiming that at various times, mostly since 2017, the Debtor used the Trust as a personal piggybank, among other things, "exercis[ing] substantial control over the Trust, Trust Real Estate, and Trust Business Entities," without the involvement or input of the Trust's putative trustee(s).  (*Id.* ¶¶ 38-39)  The Debtor is alleged to have commingled his personal funds with those in the Trust (or its assets), and the Trust's assets were allegedly used, at the Debtor's direction, to pay some of the Debtor's personal expenses (and those of his wife, Maria Graft). (*Id.* ¶¶ 40-43)  As a result, according to the Adversary Complaint, some of the Debtor's creditors have been left high and dry while the Trust "holds two principal categories of assets:  real estate and ownership interests in business entities."  (*Id.* ¶ 34)  The Trust's real estate assets are alleged to have a fair market value exceeding $3 million (*id.* ¶ 35) and what the Adversary Complaint refers to as the Trust's "direct or indirect interests in numerous business entities" (which were also named as defendants in this lawsuit) have an unidentified additional value.

The Trustee makes a few particularized allegations of how the Debtor purportedly misused the trust.  (*Id.* ¶¶ 31, 52-56, 70, 73, 75, 77, 79, 80, 93, 101-02, 105, 108, 111-14, 115, 116)  The purposes of the Debtor's alleged machinations, according to the Adversary Complaint (the factual allegations in which I must assume to be true at this point in the case), include

---

[2]  According to the Trustee, the Debtor created the Trust in 2006. (Compl. ¶¶ 12, 27)

"knowingly us[ing] the Trust and its professionals to conceal his assets and business interests from creditors." (*Id.* ¶ 43) According to the Adversary Complaint, "[t]he Debtor has actively and consistently concealed his legal and/or equitable interests in the Trust, Trust Business Entities, and Trust Real Estate . . . . willfully to perpetuate a wrong on the creditors . . . . [and e]ven after he filed the [Bankruptcy] Case, the Debtor attempted to conceal his interest by testifying falsely." (*Id.* ¶¶ 98-100) More generally, the Trustee describes the sum and substance of her Adversary Complaint as seeking "entry of a judgment declaring that a trust created by the Debtor to avoid his creditors is property of the Estate because the Debtor exercised, and continues to exercise, such a significant degree of dominion and control over the trust and its assets that permitting the trust to maintain its fiction of a separate identity (and hence be excluded from the Estate and free of the Debtors' creditors' claims) would sanction a fraud or promote injustice under the circumstances." (*Id.* ¶ 2; *see id.* ¶ 4 ("[T]hrough the use of the trust and several business entities, the Debtor has perpetrated, and continues to perpetrate, a scheme whereby he has diverted and continues to divert millions of dollars away from his creditors, while he continues to enjoy a lavish lifestyle with his wife and adult children.")

Having reviewed the Adversary Complaint, the parties' briefs, and the authorities cited, the Motions are granted in part and denied in part. Counts III, VI-VIII, and IX-XI are dismissed and, although I think it unlikely that the Trustee could plead additional facts to sustain those claims, I will dismiss those claims without prejudice for now. Counts XII and XIII are stayed, as those same claims (which are severable from the remaining claims) will be resolved in the previously filed (and already answered) Adversary No. 24-00066. The remaining claims (Counts I, II, IV, and V) survive dismissal, and this Adversary Proceeding will now move on to discovery and (absent settlement or successful dispositive motion) trial.

The briefing on the five Motions collectively is voluminous but it is easiest to digest and address the Motions by walking through each of the specific counts as they are pled within the Adversary Complaint.

Count I of the Adversary Complaint is titled "Declaratory Relief—The Trust" and requests "that the Court enter a judgment declaring that the Trust, including all of its assets and income, are property of the estate, and for all other relief the Court deems just and equitable." (Compl., p. 20, 21-22)  The parallel Count IV requests the same relief with respect to each of the so-called "Trust Business Entities," alleging that "[t]he Trust Business Entities, and all of their assets and income, are rightfully property of the estate" because, among other things, such entities "were created to implement a fraud on the creditors of the Debtor and this estate," they "failed to maintain an arm's length relationship among themselves and the Debtor," they "have commingled funds amongst themselves and paid or transferred assets for less than reasonable and adequate consideration," and thus "[m]aintaining the fiction of the separate 'identities' of the Trust Business Entities would sanction a fraud and promote injustice."  (Compl. ¶¶ 140-46)

The parties' briefs characterize Counts I and IV as pursuing a theory of "reverse piercing" of the corporate veil, in that the claim seeks to reach assets of the Trust to satisfy the Debtor's obligations.  One might otherwise characterize the claims as alter ego claims, in which an entity (or series of entities) was used as an instrumentality of a debtor and used deliberately to distort transactions in a way that benefitted the debtor at the expense of creditors.  *See, e.g., Martino v. Shakir (In re Shakir)*, 643 B.R. 203, 217 (Bankr. N.D. Ill. 2022) (denying motion to dismiss alter ego and other related claims because "[t]aken as true, the Amended Complaint's allegations show that the companies and trust are the cat's paws of the Debtor").

4

For the reasons stated below I believe the Adversary Complaint sufficiently pleads the requests for Declaratory Relief seeking to pull the assets of the Trust into the estate, and I will thus deny the Motions to Dismiss Counts I and IV (and their related turnover Counts II and V). There are two principal reasons that I believe these counts of the Adversary Complaint survive dismissal at this point in the case, one procedural and one substantive.

*First*, the Seventh Circuit has made clear that the purpose of the pleading rules is to make sure a defendant is on notice of the nature of plausible claims against it. Thus, Federal Rule of Civil Procedure 8 (and its companion Federal Rule of Bankruptcy Procedure 7008) sets a low bar.[3]  It does not matter if a claim is properly named, and unless Rule 9 applies, details of the alleged claim are generally not required at the pleading stage. As the Seventh Circuit made particularly clear in a recent case, "[m]atching facts to legal elements is the distinctive feature of code pleading, which was abrogated when the Rules of Civil Procedure introduced notice pleading." *Thomas v. JBS Green Bay, Inc.,* 120 F.4th 1335, 1337 (7th Cir. 2024).  "It is enough to plead a plausible claim, after which "a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Id.* (quoting *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846 (7th Cir. 2017)).  A "full description of the facts that will prove the plaintiff's claim comes later, at the summary judgment stage or in the pretrial order." *Id.*

---

[3] A claim as pled must only be plausible, raising a plaintiff's right to relief above a "speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and a complaint must contain "enough details about the subject-matter of a case to present a story that holds together." *Reed v. Palmer*, 906 F.3d 540, 550 (7th Cir. 2018) (internal quotation omitted).  But that's all.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  In other words, I can dismiss plaintiff's claims only if they are implausible, regardless of whether plaintiff is likely to ultimately prevail. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-15 (2002) ("Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'") (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

Here, again, the gist of the Complaint is that the Debtor operated the Trust as his own instrumentality in a deliberate way to conceal assets from creditors, and thus the Trustee asks me to treat the Trust and the Debtor as one and the same.  That states a plausible alter ego claim even though the facts underlying the substantive claim as pled are somewhat thin at this point in the case.  The Trustee lists many of the reasons why she believes the Debtor "has exercised significant control over [the Trust] and has derived considerable benefit from it and its substantial assets" and why she believes the Trust and Debtor should be treated as one and the same.  (*See, e.g.,* Complaint ¶ 120(a)-(g))  Among other things, according to the Trustee, "[t]he Debtor's substantial control over the Trust, the Trust Real Estate, and Trust Business Entities is very often exercised without any input or involvement from the purported trustee."  (*Id.* ¶ 39)  In addition, the Debtor allegedly "created the Trust in order to avoid future creditors while continuing to enjoy his lavish lifestyle" (*id.* ¶ 124) and the Trust "was formed and operates to implement a fraud on the creditors of the Debtor and this estate" (*id.* ¶¶ 122, 127).

To be clear, I might tend to agree at this point that the allegations in the Adversary Complaint as pled do not advance a *strong* alter ego claim, and I also agree with the movants that the standards for ultimately *proving* this claim and convincing me that an individual person and related entities are alter egos of one another and should be treated as one, are high.  But that's irrelevant to Rules 8 and 12 (and their companion Bankruptcy Rules 7008 and 7012).  With respect to the Trustee's Declaratory Judgment claims against the Trust, the Adversary Complaint gives fair notice to the defendants of what is being alleged and alleges facts sufficient to describe an identifiable, plausible claim's elements, and it is thus sufficient to state a claim.  Under the Federal Rules, the Trustee is now entitled to the opportunity to take discovery, develop the claim further, and present whatever evidence she has in support of it in later proceedings, at which

point it will either succeed or fail.  *Compare Shakir*, 643 B.R. at 211-13 (listing the "only two requirements" for the relief sought here as there being "such a unity of interest and ownership that the separate personalities of the corporation and the parties who compose it no longer exist" and facts present "such that an adherence to the fiction of separate existence of the corporation would sanction a fraud or promote injustice" and evaluating the complaint for allegations of (1) inadequate capitalization; (2) failure to observe corporate formalities; (3) insolvency of the debtor; (4) nonfunctioning of the other officers or directors; (5) absence of corporate records; (6) commingling of funds; (7) diversion of assets from the corporation by or to a shareholder; (8) failure to maintain arm's length relationships among entities; and (9) whether the alleged alter ego is a mere façade for the alleged principal) *with, e.g.,* Compl. ¶¶ 2-5, 38-45, 48, 52, 56-60, 75, 76-78, 80, 98-105, 109, 115, 120-28, 141-47.

*Second*, I disagree with the movants' assertions that Illinois law prohibits alter ego claims like the claim advanced here as efforts to "reverse pierce" the corporate veil.  Instead, in my view, alter ego in any direction is a viable claim in Illinois—as it is in most if not all other states. As a threshold matter, while (as the parties acknowledge) there are not clear Illinois Supreme Court cases on point, it seems unlikely that Illinois law would always permit hiding assets in a trust to keep them from creditors when a now-debtor (as alleged here) directs substantially all activities of that trust, treats the trust as his own personal piggybank, and allegedly "formed and operate[d]" the trust "to implement a fraud on the creditors of the Debtor and this Estate." (Compl. ¶ 122)  My predecessor did find that a "reverse-piercing" claim could not survive in dismissing what he characterized as "something of a mess" of a complaint in *Gierum v. Glick (In re Glick),* 568 B.R. 634, 650 (Bankr. N.D. Ill. 2017).  But subsequent authority has gone the other direction and I do not agree with the movants' assertion that, as a matter of law, reverse

7

piercing of the corporate veil (or, alternatively, alter ego) is a dead-letter in Illinois. *E.g., Shakir*, 643 B.R. at 211-13. Instead, as I advised the parties at oral argument, I agree with Judge Tharp's analysis of the subject in *Reid v. Wolf (In re Wolf)*, 644 B.R. 725, 747-52 (N.D. Ill. 2022), *aff'd* 2023 WL 6564882, at *4 (7th Cir. Oct. 10, 2023). I also note that, in affirming Judge Tharp's decision fifteen months ago, a Seventh Circuit panel cited two of the Circuit's prior and clearly binding decisions on the topic and noted that:

> [W]e [the Seventh Circuit] have previously concluded that Illinois law would endorse outside reverse veil-piercing. *See Scholes [v. Lehmann]*, 56 F.3d [750], at 758 [7th Cir. 1995] (allowing trustee to pierce veil of corporations solely controlled by Ponzi schemer); *Sea-Land Servs., Inc. [v. Pepper Source]*, 941 F.2d [519,] at 524–25 [7th Cir. 1991] (endorsing outside reverse veil-piercing claim but remanding for want of evidence of injustice). We see no reason to deviate from these decisions; if the Illinois Supreme Court—or the legislature—disagreed, we would have expected a signal in the many years since.

*Wolf*, 2023 WL 6564882 at *4.

At argument, I asked counsel whether *Wolf* was distinguishable because the entity at issue here is a trust (as opposed to a corporation, partnership, or LLC) and defense counsel claimed it was, directing me to *Rush Univ. Med. Ctr. v. Sessions*, 2012 IL 112906 (Ill. 2012). But that case does not help the movants. In *Rush*, a donor pledged $1.5 million to Rush Medical Center, which built a new facility (and named it after the putative donor) in reliance on that gift. *Id.* ¶¶ 4-5. The donor (Sessions) then separately created a family trust for his children, which he funded with $19 million. *Id.* ¶ 3. After making the pledge, however, Sessions was diagnosed with a terminal illness for which he blamed the medical center, never funded his pledge, and changed his will such that it made no provision for payment of his pledge. *Id.* ¶ 6. When Sessions died, the medical center sued to enforce his pledge, and also sought to reach the assets of the family trust (by suing its trustees) to satisfy Sessions' alleged debt. The trial court entered

8

judgment for the medical center, finding "that the trust is liable for payment to plaintiff on the pledge." *Id.* ¶ 10. And the Illinois Supreme Court ultimately affirmed.

The primary issue resolved by the Illinois Supreme Court in *Sessions* was whether the existence and terms of the Illinois Fraudulent Transfer Act (IFTA), which provides statutory grounds for avoidance and recovery of specific transfers made when a debtor is insolvent and does not receive reasonably equivalent value for them, supplant common law claims that might pursued in lieu of (or in addition to) challenges to specific transfers made under the IFTA. The Illinois Supreme Court held that it did not, instead making clear that "[t]he common law and the [IFTA] are supplementary not contradictory" as "[b]oth laws have a general purpose of protecting creditors" and "the act and the common law rule each operate in some circumstances where the other does not, thus negating any inference that the common law rule would render the [fraudulent transfer] Act superfluous." *Id.* ¶¶ 21-22. Thus, nothing in *Sessions* suggests that a plaintiff cannot pursue an Illinois trust for the debts of its settlor on a common law theory like alter ego; to the contrary, both the result and the rationale provided by the Illinois Supreme Court in *Sessions* clearly suggests that such claims are viable.[4]

---

[4] The movants also rely on *Independent Bank v. Nelson*, 2019 IL App (2d) 171007-U, ¶ 34, arguing that it states a binding pronouncement of law broadly prohibiting the piercing of Illinois trusts. I disagree. As a threshold matter, *Nelson* is not precedential. In fact, when one views the case on Westlaw, the first thing visible is a NOTICE: "THIS ORDER WAS FILED UNDER [ILLINOIS] SUPREME COURT RULE 23 AND MAY NOT BE CITED AS PRECEDENT BY ANY PARTY EXCEPT IN THE LIMITED CIRCUMSTANCES ALLOWED UNDER RULE 23(e)(1)." Movants fail to comply with Illinois Supreme Court Rule 23 and argue (incorrectly) that *Nelson* stands for the proposition that "the Illinois Appellate Court has expressly rejected" reverse veil piercing. Trust Def's Reply at 1. Further, even if it were precedential, *Nelson* did not find that the alter ego doctrine is always unavailable as a matter of Illinois law, but merely that only a "debtor" (which did not include the alter ego of a debtor) could be held liable *under the IFTA*. *See id.* ("Had the legislature intended to include such a trust as an "alter ego" of its settlor in its definition of "debtor," it could have done so in any of these provisions. Consequently, we reject plaintiff's argument that the Richard Nelson Trust should be considered an "alter ego" of Nelson, and thus, the combined "debtor" under the Act."). A broader interpretation of *Nelson* cannot survive scrutiny given that, in *Sessions*, the Illinois Supreme Court confirmed in a precedential opinion that common law claims and remedies are in fact available in parallel with IFTA claims and may be pursued when a plaintiff has no actionable IFTA claims.

Defendants also contended at argument that the Trustee's alter ego theory could not survive because the Adversary Complaint does not explicitly plead that any particular creditor relied on the existence of the Trust (and/or its assets) in deciding to do business with the Debtor. I agree that such facts (if they existed) could be quite helpful in advancing an alter ego claim, but am not convinced that such facts are *necessary* to *plead* the "prevention of fraud and avoidance of injustice" prong of the alter ego analysis, *see, e.g., Shakir*, 643 B.R. at 214, as a matter of law, *see, e.g., Sea-Land Servs.,* 941 F.2d at 524 (including an "intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation" as an example of the type of "injustice" that might justify piercing). Defendants in essence contend that individual creditor reliance on the assets of the alleged alter ego to extend credit to the alleged principal is necessary for a claim to survive dismissal, but the standard described in the caselaw is somewhat different, requiring instead that "adherence to the fiction of separate existence of the corporation would sanction a fraud or promote injustice." *Sea-Land Servs.*, 941 F.2d at 520 (citing cases). The Defendants' argument is similar to the one rejected by one of my colleagues in *Shakir*, and I agree that their "argument that alter ego claims can only be 'cognizable on a claim-by-claim, creditor-by-creditor basis' does not withstand scrutiny under the Seventh Circuit's decisions affirming both the remedy's validity and a bankruptcy trustee's right to assert it." *Id.* So, while I agree that the absence of evidence that creditors of the Debtor believed or had reason to believe they would have access to Trust assets in deciding to do business with the Debtor could create challenges for the Trustee at trial, I do not believe it is impossible to prove the necessary "prevention of fraud and avoidance of justice" without such facts. Given what *is* pled in the Adversary Complaint, the Trustee is "entitled" to take discovery and "offer evidence to support the claims," *see AnchorBank*, 649 F.3d at 614.

10

At the end of the day, therefore, whether the Trustee can ultimately meet her burden of proof will await discovery and trial; for now, Counts I and IV suffice to state plausible claims and the Motions are denied as to those counts of the Adversary Complaint.

Counts II and V of the Adversary Complaint follow the Trustee's alter ego claims, seeking turnover pursuant to 11 U.S.C. § 542 and asserting that "[i]f the Trust and its assets are declared to be property of the Estate, such assets must then be turned over to the Trustee."  Compl. ¶ 132; *see also id.* ¶ 152.  That's true, and there appears no dispute among the parties on that particular point, so with the survival of Counts I and IV, the related turnover Counts II and V stand too.

But for the same reason, Counts III and VI, seeking a "constructive trust" as a "device used to compel one who unfairly holds property to convey the property to the party to whom it justly belongs," *id.* § 134, are unnecessary, and they do not survive.  As a threshold matter, constructive trust is a *remedy* and not a claim.  *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 304 (7th Cir. 2014).  Moreover, Section 542 of the Bankruptcy Code itself *requires* the turnover of assets of the estate if they are in fact assets of the estate, rendering any such "constructive trust" moot in these circumstances.  Accordingly, Counts III and VI are dismissed.

Count VII of the Adversary Complaint asserts "Fraud," claiming that the "Debtor's actions and concealment of actions related to the Trust and the Trust Business Entities were calculated to deceive," and those entities "have been used as fraudulent devices to prevent the Debtor's creditors from being fully satisfied." (Compl. ¶¶ 160-61)  But that's far too vague. Bankruptcy Rule 7009 is clear:  "Fed. R. Civ. P. 9 applies in an adversary proceeding," and Federal Rule of Civil Procedure 9(b) is unambiguous:  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Thus, the classic formulation in the Seventh Circuit is that plaintiff must state the "who, what, when, where, and

11

how" of the alleged fraud, a/k/a "the first paragraph of any newspaper story." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990).  Here, it is not clear from the Adversary Complaint exactly who (other than unidentified creditors generally) was defrauded, and precisely when or where or how they were defrauded; all of this would be needed to plead the common law fraud alleged in Count VII.  The Trustee claims in her brief that "the Defendant made numerous false representations (both in the past and currently) which his creditors relied on to their detriment, and which the Debtor continues to ask this Court and the Estates' creditors to rely on even today."  Trustee's Opposition Brief at 74.  But no specific representation or reliance is detailed in the Adversary Complaint, which would be necessary for the Trustee to satisfy Rule 9(b).[5]   Thus, Count VII is dismissed.

Count VIII is titled "11 U.S.C. §549 and §550" and alleges that "the Defendants who received transfers of property of the Estate after the commencement of the bankruptcy case which were not authorized under the Bankruptcy Code or by the bankruptcy court should be avoided pursuant to 11 U.S.C. § 549 and then recovered by the Trustee pursuant to 11 U.S.C. §550."  (Compl. ¶ 171)  While that's fair enough, the Adversary Complaint does not identify any such transfers, let alone plead that such transfers were not authorized by the Bankruptcy Code or order of court.  Thus, on this score I agree with the Debtor's Motion to Dismiss: "the Trustee did not include any transfers in the Complaint and Debtor therefore has no idea which transfers the Trustee is even specifically seeking to avoid.  This bare-bones pleading does not put Debtor on

---

[5] The Trustee contends that she should be exempted from this rule because the Debtor (according to the Trustee) "concealed his actions from creditors" and then, during the Rule 2004 process, "sought to inundate parties with documents."  Trustee's Response Br. at 6 & n.3.  I disagree with the Trustee that "[r]equiring [her counsel] to review 1 million pages of whatever documents the Debtor included in his self-proclaimed document dump in order to plead even more specific facts . . . would be legally inappropriate and reward the Debtor's conduct."  *Id.* at 6.  Rule 9 (and Bankruptcy Rule 7009) requires that fraud be pled with particularity.  The fact that the Trustee obtained voluminous discovery pursuant to Bankruptcy Rule 2004 prior to filing the Adversary Complaint makes it a stronger rather than a weaker case for application of Rule 9 even if I were inclined to disregard that rule (which I am not).

notice of the allegations sufficient for him to formulate a meaningful response, and Count VII

should be dismissed." Debtor's Motion to Dismiss at 8. Thus, Count VIII is dismissed.

Next come Counts IX, X, and XI, each of which relates to a home in Arizona owned by

the Debtor's wife, into which the Debtor is alleged to be moving. (Compl. ¶¶ 88, 94, 96, 175)

The Adversary Complaint alleges that this home, 1.5 miles from the Debtor's mother's

residence, was acquired in a way that was "purposefully structured" to conceal it from the

Debtor's creditors. (*Id.* ¶¶ 88-90) According to the Adversary Complaint, the purchase price

was $632,000, and it was paid with: (a) a mortgage procured by the Debtor's wife, defendant

Maria Graft; and (b) a loan from the Debtor's father to the purchaser (Mrs. Graft), secured by a

second lien on the property. (*Id.* ¶ 93) On October 19, 2020, at the time of the transaction, the

Debtor executed a "Disclaimer Deed," which was publicly recorded. (*Id.* at Exhibit 21) In the

"Disclaimer Deed," the Debtor (a year and a half before he became a Debtor) described that the

property at issue "is the sole and separate property of the Spouse having been purchased with

separate funds of the Spouse" (*id.* ¶ 2) and that the Debtor had "no present right, title, interest,

claim or lien of any kind or nature" in the property (*id.* ¶ 3). The Debtor publicly (in a recorded

document) "disclaime[ed], remise[d], release[d] and quitclaim[ed] unto Spouse and to the heirs

and assigns of Spouse forever, all right, title, interest, claim and demand which Undersigned

might appear to have in and to the Property" (*id.* at p. 2).

The Trustee admits all of this in the Adversary Complaint—that the home is held by Mrs.

Graft, was not purchased with a single dollar from the Debtor or the Trust, and although the

Debtor apparently considered potentially using the Trust for some aspect of the transaction at

some point, the Trust was never actually used for the transaction at all. The Trustee similarly

concedes that the Debtor has never had any legal interest in the property. Yet the Trustee claims

13

"[d]espite legal title being presently held in the name of the Debtor's wife, the Debtor has an equitable ownership interest and control of the AZ house" and the equity in the home "justly belongs to the Debtor and this Estate." (Compl. ¶ 178, 180) She seeks a declaration that the home is property of the estate and asks that I avoid the Debtor's "transfer" of an interest in the home and impose a constructive trust on the home. (Compl. Counts IX-XI)

The Trustee's theory is, quite frankly, a little confusing. The Trustee claims that "the facts pled allege that the Debtor is an equitable owner of his Arizona home" and that "the Trust has a legal or equitable interest in the Debtor's Arizona home." (Trustee's Opp. Brief at 73.) But according to the facts pled in the Adversary Complaint, the home is owned by the Debtor's wife and was purchased with funds from a mortgage taken out solely by the Debtor's wife and a loan to the Debtor's wife from the Debtor's father, secured by a second lien on the property. (Compl. ¶ 93). Nothing in the Complaint suggests that any of the Debtor's money or property (or the Trust's money or property) was used to acquire the Arizona home, and the facts plead in the Adversary Complaint seemly make clear that none was. Nor does the Trustee plead, or attempt to plead, that Maria Graft (the actual owner of the home) is or ever was the alter ego of the Debtor, such that her assets too should be brought into the estate. Nor have any creditors attempted to bring Mrs. Graft into an involuntary bankruptcy, arguing that she too is liable for Mr. Graft's debts generally, or sought to substantively consolidate her assets with her husband's.

The Trustee appears to suggest that because the Debtor is married to the home's owner and is in the process of moving to the home, and because the Debtor at some point considered the possibility of using Trust assets to acquire the home (or having the Trust partially or wholly own the home) the Debtor has some sort of legal interest in the home that brings it into the estate. But the Trustee cites no legal principle that would make that so. Counsel to Maria Graft directs

14

me to *Bell-Kilbourn v. Bell-Kilbourn*, 169 P.3d 111 (Az. App. Ct. 2007), which appears on point.

As is alleged here, in *Bell-Kilbourn* a home transaction was deliberately structured to be owned

by a wife because of her husband's bad credit, and the husband executed a deed at the time of the

transaction disclaiming any interest in the property.  As is the case here (based on the allegations

in the Complaint), there was no evidence that community property was used to acquire the home.

Thus, "[a]lthough the parties indisputably elected to have Wife purchase the property in order to

obtain financing, the reason for this election does not alter the character of the property

established as Wife's separate property at the time of acquisition."  *Id.* at 114.  So too here.

Because the Arizona home was never an asset of the Debtor, and there are no substantive

allegations suggesting that it is or ever was an asset of an entity alleged to be the alter ego of the

Debtor, it is not part of the estate, and Counts IX, X, and XI are dismissed.

Having dismissed Counts III, VI-VIII, and IX-XI of the Adversary Complaint, the next

question is whether dismissal should be with or without prejudice.  The Trustee seeks leave to

amend, *see* Trustee Oppo. Br. at 5 & n.9, and the Seventh Circuit has directed that:

> "Ordinarily, a plaintiff whose complaint is dismissed under Rule 12(b)(6)
> should be given at least one opportunity to try to amend her complaint
> before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts
> of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).
> We have said that a court should deny leave to amend "only if it is certain
> that amendment would be futile or otherwise unwarranted." *Zimmerman v.
> Bornick*, 25 F.4th 491, 494 (7th Cir. 2022).

*Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, 44 F.4th 1014, 1034 (7th Cir. 2022).

Thus, while I believe it unlikely that these claims could be properly pled (and the "Additional

Facts" included with the Trustee's Opposition Brief, *see* Dkt. No. 48-1, pp. 2-4, would not

change anything), each of these claims are dismissed without prejudice for now.  If, after the

close of discovery, the Trustee believes that she can properly plead such claims consistent with

the guidance provided here, the Trustee may attempt to do so at that time.

Finally, I will address Count XII, titled "Declaratory Relief—The Escrow" and the related Count XIII, which seeks turnover of certain escrowed funds pursuant to 11 U.S.C. § 542. These Counts address $133,242.56, which is being held in escrow subject to the joint direction of the Debtor and defendant Sheryl Marsella.  (Compl. ¶¶ 6, 191)  Ms. Marsella also claims an interest in these same funds, and she is both a defendant in this dispute and a plaintiff in another adversary proceeding, *see Marsella v. Graft, et al.*, Adv. Proc. No. 24 A 66, in which she, several days before the filing of this Adversary Compliant, brought a claim seeking a declaration of her alleged entitlement to the same escrowed funds.  Ms. Marsella's first-filed lawsuit on the same subject has already survived a motion to dismiss, (*id.* at Dkt. No. 46), and has been answered by the Debtor (*id.* at Dkt. No. 50), the Trustee (*id.* at Dkt. No. 51), and the other defendant (*id.* at Dkt. No. 52).  Moreover, as part of her answer to Ms. Marsella's complaint in Adversary Proceeding No. 24 A 00066, the Trustee "requests judgment be entered in her favor and against Plaintiff, denying all relief requested by the Plaintiff and declaring that the funds being held in escrow are property of the Estate."  (Adv. Proc. No. 24-00066, Dkt. No. 51, answer to ¶ 46)

The Trustee's pleading of Counts XII-XIII in the Adversary Complaint here is vague and does not clearly articulate the nature of the estate's alleged interest in the escrow.  The only allegations related to the escrow in the Adversary Complaint are these:  (a) in Paragraph 6, the Trustee avers that "there is $133,242.56 being held subject to the Debtor's and another individual's direction" which "represents the sale of property the Debtor had purchased years ago using funds from another one of his entities that since has been dissolved" and is property of the estate because, the Trustee claims, the Debtor "commingled funds from the trust and a third limited liability company to develop the property before selling it"; (b) more than 100 paragraphs later, as one of the alleged "examples of the commingling" by the Debtor of various Trust

16

Business Entities, the Trustee claims that the Debtor agreed to purchase property with Ms. Marsella, paid for the property using a now-dissolved entity, and later used funds from the Trust and MJG Construction LLC to pay more than $50,000 related to the development of the property (*id.* ¶¶ 111-12); and (c) as a result, another nearly 100 paragraphs later in the Complaint, the Trustee claims that the funds in escrow are "rightfully property of the Estate" (*id.* ¶ 192) and should be turned over (*id.* ¶¶ 193-95).

While one Defendant's argument that "Count XII of the Complaint fails to allege sufficient facts to demonstrate that Debtor as an interest in the Escrow"[6] has some purchase, I am not going to dismiss the Trustee's effort to claim the escrow at this point in the dispute. The parties agree there is a dispute about ownership of the $133,242.56 in escrow, and it is plausible that the Trustee has an interest in it, which, according to her answer, the Trustee is pursuing in the first-filed Adversary Proceeding No. 24-00066.  The reality is that, as certain defendants aver in their motion, "two days prior to the filing of the Complaint, Sheryl Marsella who is also a defendant in this action, filed her own complaint alleging that she was entitled to the escrow proceedings" and Counts XII and XII are "duplicative of issues already before the Court."  (Trust Business Entities' Motion to Dismiss ¶ 35)  I agree with Ms. Marsella's argument, made in open court during discussions concerning the Trustee's motion to consolidate, that the various parties' dispute over the escrow is fully at-issue in Adversary Proceeding No. 24-00066, is severable from the remaining issues in this Adversary Complaint, and is both narrower and more susceptible to a just and prompt resolution if litigated separately.  Accordingly, I will stay proceedings on Counts XII and XIII on my own motion, as I expect the issues presented by those two claims will be fully presented to me, and resolved, in Adversary Proceeding No. 24-00066.

---

[6] Debtor's Motion to Dismiss ¶ 37.

In sum, for the reasons described above:

- Counts I, II, IV, and V survive dismissal and shall proceed to discovery and trial on the Scheduling Order that I will enter separately;

- Counts III, VI, VII, VIII, and IX-XI are dismissed, without prejudice and with leave to re-plead at the close of discovery if Plaintiff can do so consistent with this ruling;

- Counts XII and XIII are stayed, without prejudice to the Trustee's ability to pursue the escrow in Adversary Proceeding No. 24-00066 on a Scheduling Order that I will enter separately in that adversary proceeding.

I will issue separate orders on each of the five pending motions to dismiss, as well as on the Trustee's and Ms. Marsella's respective Motions to Consolidate (Adversary No. 24-00069, Docket No. 49 and Adversary No. 24-00066, Docket No. 42), consistent with this opinion. Defendants shall answer the Adversary Complaint on or before January 24, 2025.

HON. MICHAEL B. SLADE
UNITED STATES BANKRUPTCY JUDGE